# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| OLIVIA RUHLMAN, )<br>on behalf of herself )<br>and all others similarly situated, )<br>  )<br>Plaintiffs, )<br>  )<br>v. )<br>  )<br>HY-VEE, Inc. and NNW, LLC )<br>  )<br>Defendants. ) | Civil Action No. 8:14-cv-00048<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Olivia Ruhlman ("Plaintiff") complains against NNW, LLC ("NNW") and Hy-Vee, Inc. ("Hy-Vee") (herein "Defendants") on behalf of herself and all others similarly situated as follows:

### INTRODUCTION

1.    This is a putative class action on behalf of consumers who purchased a whey protein product from Hy-Vee from 2009 until 2013 called NNW Healthy 100% Whey ("Healthy 100% Whey").

2.    Whey protein is a highly popular product given its ability, among other things, to aid in building and maintaining muscle mass, weight management, immune support, and bone health.

3.    Whey protein is naturally bitter to the taste. As a result, it is difficult to make a whey protein product that tastes good without adding significant amounts of sugar to the product.

4.      Adding sugar, however, makes the product nutritionally less desirable because adding sugar raises the caloric and total carbohydrate content of the product while conversely lowering the protein content.

5.      Therefore, the challenge is to make a product that is palatable while still retaining the desired nutritional benefits.

6.      Hy-Vee sold Healthy 100% Whey - a product distributed by NNW - from 2009 through 2013 in Hy-Vee retail stores in Illinois, Iowa, Kansas, Minnesota, Missouri, Nebraska, South Dakota and Wisconsin.

7.      In fact, Hy-Vee was the exclusive retail seller of Healthy 100% Whey at all relevant times.

8.      Healthy 100% Whey made the impossible a reality - it tasted excellent yet it purported to have some twenty-two (22) grams of protein and just one (1) gram of sugar per twenty-eight (28) gram serving.  Thus customers were willing to pay some $16, $22, and $45 for one, two, and five-pound bags of Healthy 100% Whey.

9.      In order to capitalize on the growing popularity of Healthy 100% Whey with Hy-Vee customers, Hy-Vee did not just sell Healthy 100% Whey but actively promoted it by engaging in an aggressive marketing campaign.

10.     Through this campaign, Hy-Vee actively participated in the dissemination of the nutritional misrepresentations set forth on the Healthy 100% Whey label on its website, through its dieticians and in-store demonstrations, and on television.

11.     In Fall 2013, Hy-Vee abruptly and without explanation pulled the highly popular Healthy 100% Whey off of store shelves.

12.     Healthy 100% Whey was too good to be true.

13.     In reality, Healthy 100% Whey contains less than five (5) grams of protein and over twenty (20) grams of sugar per twenty-eight (28) gram serving.

14.     In essence, Hy-Vee was selling customers nothing more than bags of sugar at an astronomical price.

15.     Plaintiff, individually and as a class action on behalf of similarly situated purchasers of Healthy 100% Whey, seeks relief in this action against NNW and Hy-Vee (collectively "Defendants") for their violation of the Magnuson-Moss Warranty Act, breach of the implied warranty of merchantability, breach of express warranty and violation of various state consumer protection laws.

## PARTIES

16.     Plaintiff Olivia Ruhlman ("Plaintiff") is an individual and citizen of Nebraska who purchased Healthy 100% Whey in Hy-Vee retail grocery stores in and around Lincoln and Omaha, Nebraska during the four (4) years prior to the filing of this Complaint ("Class Period") for personal, family, or household purposes.

17.     On information and belief, NNW, LLC ("NNW") is a limited liability company organized and existing under the law of Nebraska with its principal place of business in Gretna, Nebraska.

18.     On information and belief, NNW's sole member is a citizen of Nebraska, and as such, NNW is a citizen of Nebraska.

19.     Hy-Vee, Inc. ("Hy-Vee") is a corporation organized and existing under the laws of Iowa with its principal place of business in West Des Moines, Iowa, and as such, Hy-Vee is a citizen of Iowa.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) as amended by the Class Action Fairness Act of 2005 because this is a class action where the number of members of the class is not less than 100, any member of the class of plaintiffs is a citizen of a State different from one of the defendants, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

21.     This Court has general personal jurisdiction over NNW because of its continuous and systematic general business contacts with this forum.  NNW is organized and existing under the laws of this forum; its principal place of business is located in this forum; it is a citizen of this forum; and it is registered to do business in this forum.

22.     This Court also has specific personal jurisdiction over NNW because on information and belief NNW purposefully directed its activities to this forum's residents by shipping Healthy 100% Whey to Hy-Vee retail stores in this forum, and Plaintiffs' claims arise out of and relate to these activities.

23.     This Court has general personal jurisdiction over Hy-Vee because of Hy-Vee's continuous and systematic general business contacts with this forum.  Indeed, Hy-Vee has had retail stores in this forum since 1977, has been registered to do business in this forum since 1976, and sold Healthy 100% Whey in this forum during the Class Period.

24.     This Court also has specific personal jurisdiction over Hy-Vee because Hy-Vee purposefully directed its activities to this forum's residents by offering for sale, selling, and promoting Healthy 100% Whey in this forum, and Plaintiffs' claims arise out of and relate to these activities.

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) at least because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

26.      Hy-Vee has at least 235 retail stores located in Illinois, Iowa, Kansas, Minnesota, Missouri, Nebraska, South Dakota, and Wisconsin.

27.     In 2012, Hy-Vee had annual sales of more than $7 billion.

28.     Hy-Vee ranks among the top 25 supermarket chains and the top 50 private companies in the United States.

29.     On or around 2001, Hy-Vee created its first "HealthMarket" department, a store-within-a-store, that houses a wide assortment of health- and wellness-minded foods and non-foods.

30.     The HealthMarket department is set apart from the rest of the store with a dropped grid ceiling and warm wood tones on shelves and flooring to give the area a more natural look.

31.     To develop product selection and merchandising strategies in the HealthMarket department, in-store dietitians work together with the department's managers.

32.     Hy-Vee's dietitians have a tremendous following.

33.     When a Hy-Vee dietitian labels a new item as a "Dietitian's Pick" or includes it in a recipe or talks about it on television, Hy-Vee sees an immediate increase in sales on that item.

34.     The HealthMarket department is the fastest-growing department in Hy-Vee's stores.

35.     Hy-Vee has and does sell various protein powder products, including: Nectar, Muscle Milk, Trophix, EAS Soy Protein Powder, Gold Standard 100% Whey, and Hy-Vee 100% Whey protein powder.

36.     Beginning on or around 2009, Hy-Vee began selling Healthy 100% Whey in its stores, including in the HealthMarket department of its stores.

37.     Upon information and belief, NNW sells and distributes a variety of protein powder products and dietary supplements.

38.     NNW is the distributor of Healthy 100% Whey as set forth on the packaging of Healthy 100% Whey.

39.     Andrew Dean Stewart, according to filings with the Nebraska Secretary of State, is the listed authorized agent and owner of NNW.

40.     Upon information and belief, NNW's principal office is Mr. Stewart's single family house located in a residential neighborhood in Gretna, Nebraska.

41.     During the Class Period, Defendants sold one, two, and five-pound bags of Healthy 100% Whey for approximately $16, $24, and $45, respectively.

42.     Upon information and belief, during the class period, Hy-Vee was the exclusive retail seller of Healthy 100% Whey.

43.     Set forth below is the label on the front of a representative bag of Healthy 100% Whey:



44.     Set forth below is the label on the back of Healthy 100% Whey:



45.     The Food and Drug and Cosmetic Act regulates the proper labeling of food.  21 U.S.C §§ 301 *et seq.*

46.     It also vests the Food and Drug Administration with the authority to protect the public health by ensuring that foods are safe, wholesome, sanitary, and properly labeled.  21 U.S.C. § 393 (b)(2)(A).

47.     Pursuant to this authority, the FDA has promulgated regulations pertaining to labeling requirements.  21 C.F.R. § 101.1 *et. seq.*

48.     Plaintiff alleges that Healthy 100% Whey is not exempt from the requirements of 21 U.S.C. §343(q).

49.     21 U.S.C. §343(q), *inter alia*, deems a food misbranded unless the food labels accurately provide the following nutrient information:

(q)     Nutrient Information

(1) Except as provided in subparagraphs (3), (4), and (5), if it is a food intended for human consumption and is offered for sale, unless its label or labeling bears nutrition information that provides --

(A)(i)  the serving size which is an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food, or (ii) if the use of the food is not typically expressed in a serving size, the common household unit of measure that expresses the serving size of the food,

(B)     the number of servings or other units of measure per container,

(C)     the number of calories --

(i)     derived from any source, and

(ii)      derived from the total fat, in each serving size or other unit of measure of the food,

(D)      the amount of the following nutrients: Total fat, saturated fat, cholesterol, sodium, total carbohydrates, complex carbohydrates, sugars, dietary fiber, and total protein contained in each serving size or other unit of measure.

50.      During the Class Period, the labeling on the package of Healthy 100% Whey, as sold by Defendants, did not adequately disclose the actual level of protein, total carbohydrates and sugar per serving in accordance with 21 U.S.C. 343(q).

51.      As set forth on the label, a serving size of Healthy 100% Whey is approximately twenty-eight (28) grams.

52.      The label on Healthy 100% Whey states that one serving size contains twenty-two (22) grams of protein.

53.      In reality, one serving size of Healthy 100% Whey contains approximately less than five (5) grams of protein.

54.      The label on Healthy 100% Whey states that one serving size contains one (1) gram of sugar.

55.      In reality, one serving size of Healthy 100% Whey contains approximately over twenty (20) grams of sugar.

56.      The label on Healthy 100% Whey states that it is diabetic-friendly.

57.      Given that Healthy 100% Whey contains approximately over twenty (20) grams of sugar per serving, it is not diabetic-friendly.

58.      On information and belief, Hy-Vee entered into sales and marketing agreements with NNW to uniformly promote and market Healthy 100% Whey.

59.     As such, during the Class Period, Hy-Vee did not just sell Healthy 100% Whey but actively participated in the dissemination of the nutritional misrepresentations set forth on the Healthy 100% Whey label on its website, through its dieticians and in-store demonstrations, and on television.

60.     During the Class Period, Hy-Vee dieticians selected Healthy 100% Whey as a õPick.ö

61.     For example, on June 5, 2010, Hy-Vee, posted the following on its website, which is currently available at: https://www.hy-vee.com/stores/calendar/detail.aspx?m=6&y=2010&s=12&event=13848, stating that Healthy 100% Whey had been designated a Pick by one of the dieticians in Blue Springs, Missouri:



62.     In this June 5, 2010 posting, Hy-Vee also reinforced the nutritional misrepresentations set forth on the label of Healthy 100% Whey, stating that Healthy 100% Whey contains twenty-two (22) grams of protein per serving and is diabetic friendly.

63.     Defendants also made recipes available on Hy-Vee's website that included Healthy 100% Whey as an ingredient.

64.     For example, set forth below is a chocolate milk gluten-free brownie recipe currently available on Hy-Vee's website at http://hy-vee.com/meal-solutions/recipes/Chocolate-Milk-Gluten-Free-Brownies-R7584.aspx that includes Healthy 100% Whey as an ingredient:



65.     Hy-Vee misrepresented the protein and sugar content for a serving size of recipes on its website that included Healthy 100% Whey as an ingredient.

66.     For example, Hy-Vee states on its website that a serving size of the chocolate milk gluten-free brownie recipe using Healthy 100% Whey identified in paragraph 64 of this complaint contained twelve (12) grams of protein and two (2) grams of sugars.



67.     A serving size of this recipe does not contain twelve (12) grams of protein and two (2) grams of sugar.

68.     Defendants further marketed Healthy 100% Whey through Hy-Vee dieticians and through in-store demonstrations.

69.     During the Class Period, Hy-Vee representatives conducted in-store demonstrations utilizing Healthy 100% Whey.

70.     For example, Hy-Vee held õCooking with CardioWellnessö classes that promoted recipes using Healthy 100% Whey as an ingredient.

71.     Defendants also marketed Healthy 100% Whey on television through the use of Hy-Vee dieticians.

72.     For example, on February 3, 2012, a Hy-Vee dietician named Kodi Moore promoted Healthy 100% Whey on the Kansas City, Missouri Fox 4 News Morning Show by presenting a õHy-Vee heart healthy oatmealö recipe with Healthy 100% Whey as an ingredient.

73.     Hy-Vee further promoted Healthy 100% Whey by giving it prominent shelf positions within the HealthMarket.

74.     On information and belief, Healthy 100% Whey was a very popular product with Hy-Vee customers.

75.     On or around September and October 2013, Hy-Vee abruptly stopped selling Healthy 100% Whey.

76.     After Hy-Vee pulled Healthy 100% Whey off of its store shelves, Hy-Vee shoppers routinely inquired why Healthy 100% Whey was no longer available at Hy-Vee stores.

77.     The Hy-Vee website has a page devoted to product recalls.

78.     Hy-Vee never posted on the recall page of the Hy-Vee website that Healthy 100% Whey was subject to a manufacturer recall.

79.     NNW has never issued a recall of Healthy 100% Whey.

80.     Nor has Hy-Vee issued a recall of Healthy 100% Whey.

81.     Upon information and belief, as of February 12, 2014, NNW still sells Healthy 100% Whey using the same formula as that sold by Hy-Vee.

82.     Plaintiff is and was a reasonably diligent consumer looking for a product that was high in protein and low in sugar content.

83.     Plaintiff purchased Healthy 100% Whey at Hy-Vee retail stores located in Lincoln, Nebraska and Omaha, Nebraska within the last four years.

84.     Plaintiff read the representations made on the packaging and labeling of Healthy 100% Whey before purchasing the product.

85.     Plaintiff reasonably relied on the representations made on the packaging and labeling regarding the protein and sugar content of Healthy 100% Whey.

86.     Further, Plaintiff and members of the proposed Class, are parties to whom the Defendants could be expected to act upon the representations contained on the packaging and labeling and marketing of Healthy 100% Whey.

87.     In fact, the misrepresentations on the labeling and the advertising campaign were targeted to consumers like Plaintiff and members of the Class.

88.     Nevertheless, Plaintiff did not discover that the Healthy 100% Whey label was false, deceptive, and/or misleading until after the product was taken off Hy-Vee's shelves.

89.     Plaintiff was unaware that the Healthy 100% Whey protein powder contained less than five (5) grams of protein and over twenty (20) grams of sugar per serving at the time she purchased and consumed the product.

90.     Plaintiff is not a nutritionist, food expert, or food scientist; Plaintiff is a lay consumer who did not possess specialized knowledge of food testing capabilities unlike the Defendants.

91.     Plaintiff, in the exercise of reasonable diligence, could not have discovered the deceptive practices and misrepresentations of the Defendants earlier because, like nearly all consumers, Plaintiff does not have food testing capabilities whereby she could have uncovered the true nutritional content of Healthy 100% Whey.

92.     Plaintiff purchased Healthy 100% Whey believing it to contain twenty-two (22) grams of protein with only one (1) gram of sugar based on Defendants' warranty and deceptive marketing, advertising and misrepresentations.

93.     Healthy 100% Whey costs more than similar products unassociated with misleading advertisements and misrepresentations and would have cost significantly less absent the false and misleading statements.

94.     Plaintiff and members of the Class paid more for Healthy 100% Whey than they otherwise would have had they not been misled by the false and misleading advertisements and misrepresentations complained of herein.

95.     Plaintiff and members of the Class would not have purchased Healthy 100% Whey at the prices they did, or would not have purchased the product at all, absent the false and misleading misrepresentations.

96.     For these reasons, Healthy 100% Whey was worth less than what Plaintiff and members of the Class paid for it.

97.     Plaintiff and Class members were induced to and did purchase Healthy 100% Whey instead of competing products based on the false statements and misrepresentations described herein.

98.     Instead of receiving a product that had the advantages inherent in containing twenty-two (22) grams of protein and only one (1) gram of sugar, Plaintiff and members of the Class received products that had significantly less protein and many more grams of sugar.

99.     Plaintiff and members of the Class lost money in the amount of the purchase price of the product as a result of the Hy-Vee's deception in that they did not receive what they paid for.

100.    Plaintiff and members of the Class altered their positions to their detriment and suffered damages in the amount equal to the amount they paid for Healthy 100% Whey.

## CLASS ACTION ALLEGATIONS

101.    Plaintiff seeks certification of a Class defined as follows:

> All persons, in the States of: Illinois, Iowa, Kansas, Minnesota, Missouri, Nebraska, South Dakota, and Wisconsin who, within the last four years, purchased Healthy 100% Whey, for family or household use from Defendants at Hy-Vee stores.  Excluded from the Class are Defendants; the officers, directors or employees of Defendants; any entity which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant; also excluded are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action and those claiming that they have suffered any personal injury as a result of consuming Defendants' misbranded product. ("Class").

102.    Plaintiff does not know the exact number of Class members at the present time. However, due to the nature of the trade and commerce involved, there are many hundreds of class members, such that joinder of all Class members is impracticable.

103.    The Class is readily ascertainable through Defendants' business records and notice can be provided by publication and through techniques similar to those customarily used in other consumer fraud cases and complex class actions.

104.    There are questions of law and fact common to the Class.   Defendants' warranties, advertising, marketing, promotional and sales practices were supplied uniformly to all members of the Class who were similarly affected by having purchased Healthy 100% Whey for their intended and foreseeable purpose as containing twenty-two (22) grams of protein per serving and only one (1) gram of sugar per serving.

105.    Plaintiff asserts claims that are typical of the Class.   Plaintiff and all Class members have been subject to the same wrongful conduct because they have all purchased Healthy 100% Whey which was mislabeled as containing twenty-two (22) grams of protein and one (1) gram of sugar per serving.   Like other members of the class, Plaintiff overpaid for Healthy 100% Whey and/or purchased a product that she otherwise would not have.

106.    Plaintiff will fairly and adequately represent and protect the interests of the Class.

107.    Plaintiff is represented by counsel who is competent and experienced in complex litigation, consumer protection and federal practice.

108.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

109.    Class certification is appropriate because Defendants have acted on grounds that apply generally to the Class, so that final relief is appropriate respecting the Class as a whole.

110.    Class certification is appropriate because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class, including the following:

a.    Whether Healthy 100% Whey, as sold by Defendants, contained the protein and sugar as represented on the label;

b.    Whether the claims made by Defendants regarding Healthy 100% Whey were or are false, misleading or reasonably likely to deceive;

c.    Whether Defendants' alleged conduct constitute violations of the laws asserted herein;

d.    Whether Healthy 100% Whey as sold by Defendants is merchantable under the Uniform Commercial Code;

e.    Whether Defendants engaged in false and misleading advertising;

f.    Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class;

g.    Whether Defendants' description of Healthy 100% Whey created express warranties;

h.    Whether, alternatively, Defendants were unjustly enriched by their deceptive practices;

i.    Whether Plaintiff and members of the Class are entitled to damages, restitution, and/or equitable relief.

111.    The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.  In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Breach of implied warranty of merchantability

112.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through and including 111 above as if fully set forth herein.

113.    Plaintiff brings First Cause individually and on behalf of the Class against Defendants.

114.    NNW, as the distributor of Healthy 100% Whey, is a merchant under the Uniform Commercial Code.

115.    Hy-Vee sold 100% Healthy Whey directly to Plaintiff and members of the Class.

116.    The Healthy 100% Whey sold to Plaintiff and members of the Class was in the same condition as when it left the control of NNW.

117.    At the time Hy-Vee sold Healthy 100% Whey to Plaintiff and other members of the Class, Hy-Vee was a merchant of protein powders.

118.    At the time of sale of Healthy 100% Whey to Plaintiff and members of the Class, Defendants impliedly warranted that Healthy 100% Whey contained twenty-two (22) grams of protein and one (1) gram of sugar per serving as set forth on the label of Healthy 100% Whey.

119.    Healthy 100% Whey was not adequately contained, packaged and labeled.

120.    Healthy 100% Whey did not conform to the promises or affirmations of fact made on the container or the label.

121.    At the time Hy-Vee delivered Healthy 100% Whey to Plaintiff and members of the Class, Healthy 100% Whey was not merchantable at least because it was not adequately contained, packaged, and labeled and/or did not conform to the representations of fact made on

its label, namely that Healthy 100% Whey contained twenty-two (22) grams of protein and one (1) gram of sugar per serving.

122.    As such, Defendants breached these implied warranties.

123.    As a direct and proximate result of Defendantsø breach of these implied warranties, Plaintiff and Class members have suffered damage at least in the amount of the purchase price of Healthy 100% Whey.

124.    Plaintifføs counsel provided Defendants with notice of the breach of these implied warranties within a reasonable time after the breaches were discovered or should have been discovered as set forth in Exhibits A and B to this Complaint.

## SECOND CAUSE OF ACTION
### Breach of express warranty

125.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through and including 124 above as if fully set forth herein.

126.    Plaintiff brings this Second Cause individually and on behalf of the Class against Defendants.

127.    Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased Healthy 100% Whey.  The terms of that contract include the promises, affirmations of fact and description of the goods made on the Healthy 100% Whey labels and packages, as described above.  The representations constitute express warranties, became part of the basis of the bargain, and are part of a standardized contract between Plaintiff and the members of the Class on the one hand, and the Defendants on the other.

128.    Plaintiff and members of the Class, as customers of Hy-Vee, could have been expected to use, consume or be affected by Healthy 100% Whey.

129.    The label of Healthy 100% Whey, as sold by Defendants, represented that the product contained twenty-two (22) grams of protein per serving and only one (1) gram of sugar, and was diabetic friendly.

130.    Plaintiff and members of the Class reasonably relied on the representations contained on the packaging and labeling of Healthy 100% Whey when deciding to purchase the product.

131.    Upon information and belief, Hy-Vee entered into marketing, advertising and sales agreements with NNW to uniformly promote and sell the mislabeled product at issue, such that Hy-Vee adopted and ratified as their own the representations contained on the packaging and label.

132.    The misrepresentations made by Defendants, as more fully described above, regarding the nutritional characteristics of Healthy 100% Whey were made for the purpose of inducing Plaintiff and the Class members to purchase the product.

133.    As described in more detail above, Healthy 100% Whey did not conform to the representations made by Defendants in that it contains significantly less protein and significantly more sugar per serving than stated on the label and other promotional materials.

134.    Plaintiff purchased numerous bags of Healthy 100% Whey from Hy-Vee for personal and household use and consumed the product prior to learning of the non-conforming nature of the product.

135.    Upon information and belief, Defendants have actual notice of the non-conforming nature of Healthy 100% Whey.

136.    Within a reasonable time after the Plaintiff discovered the breach, or should have discovered the breach, Plaintiff  by and through undersigned counsel, gave notice to Defendants

of the non-conforming nature of the product sold as well as the damage suffered as a result in a letter attached as Exhibits A and B to this Complaint.

137.     Plaintiff and the Class have performed all conditions precedent to the Defendantsø liability under this contract.

138.     Defendants breached the terms of this contract with Plaintiff and Class members, including the express warranties, by not providing a product with twenty-two (22) grams of protein per serving.

139.     Defendants breached the terms of this contract with Plaintiff and Class members, including the express warranties, by providing a product with more than one (1) gram of sugar per serving.

140.     As a direct and proximate result of Defendantsø breach of express warranty, Plaintiff and Class members have been damaged in the amount of the purchase price of the Healthy 100% Whey product purchased.

**THIRD CAUSE OF ACTION**
**Magnuson Moss Warranty Act, 15 U.S.C. §§2301, et seq.**
**Violation of Implied Warranty**

141.     Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through and including 140 above as if fully set forth herein.

142.     This claim is brought on behalf of Plaintiff and the Class against Defendants.

143.     The Magnuson-Moss Warranty Act, 15 U.S.C. §§2301 et seq., creates a private federal cause of action for breach of an õimplied warrantyö as defined by the act.  15 U.S.C. §§2301(7) and 2310(d)(1).

144.    Healthy 100% Whey, as sold by Defendants, is a õconsumer productö as that term is defined by 15 U.S.C. §2301(1), in that it constitutes tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.

145.    Plaintiff and members of the Class are õconsumer(s) ö as defined by 15 U.S.C. §2301(3) since they are all buyers of Healthy 100% Whey for purposes other than resale.

146.    NNW, as the distributor of Healthy 100% Whey, is an entity engaged in the business of making a consumer product directly or indirectly available to consumers and is therefore a õsupplierö as defined by 15 U.S.C. §2301(4).

147.    Hy-Vee, as a large retail chain grocer, is an entity engaged in the business of making a consumer product directly or indirectly available to consumers and is therefore a õsupplierö as defined by 15 U.S.C. §2301(4).

148.    Defendants, as suppliers, are also  õwarrantorsö as defined in 15 U.S.C. §2301(5) because under State law a warranty of merchantability is implied in a contract for the sale of goods if the seller is a merchant with respect to goods of that kind, as detailed more fully above.

149.    Through the sale of Healthy 100% Whey to consumers, Defendants warranted that the product conformed to the representations on the labeling and packaging.

150.    Defendants breached the warranty by failing to provide a product that had the qualities and characteristics consistent with representations made on the labeling and packaging of Healthy 100% Whey.

151.    Defendants breached the warranty by providing a product that had significantly less than twenty-two (22) grams of protein per serving.

152.    Defendants breached the warranty by providing a product that had significantly more than one (1) gram of sugar per serving.

153.    Plaintiff, by and through undersigned counsel, provided notice of the breach of warranty and the non-conforming nature of Healthy 100% Whey in the form of a letter dated January 14, 2014 attached as Exhibits A and B to this Complaint.

154.    Upon information and belief, Hy-Vee became aware of the non-conforming nature of Healthy 100% Whey in or around October 2013 and discontinued carrying and selling Healthy 100% Whey in its stores.

155.    Upon information and belief, NNW was aware of the non-conforming nature of Healthy 100% Whey on or before October 2013.

156.    Plaintiff is filing suit before Defendants are afforded an opportunity to cure for the limited purpose of establishing the representative capacity of the named Plaintiff.

157.    Plaintiff and members of the Class have been injured by Defendantsø failure to comply with its obligations under the warranties, since Plaintiff and members of the Class received a product far less valuable and desirable than warranted.

158.    Plaintiff and members of the Class have been damaged in the amount of the purchase price of Healthy 100% Whey.

159.    Plaintiff and the members of the Class have been damaged in the amount of the difference of the value of goods accepted and the value the goods would have had if they had been as warranted.

160.    Plaintiff and members of the Class seek and are entitled to recover damages and other legal and equitable relief and costs and expenses including attorneysø fees as provided in 15 U.S.C. §2310(d).

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment / Common Law Claim for Restitution**
**(in the alternative)**

161.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through and including 160 above as if fully set forth herein.

162.    Plaintiff brings this Fourth Cause individually and on behalf of the Class against Defendants.

163.    Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  At the core of each states' law are two fundamental elements -- the defendant received a benefit from the plaintiff and it would be inequitable or unjust under the circumstances for the defendant to retain that benefit without compensating the plaintiff.

164.    Plaintiff and the Class members conferred a benefit on Defendants by purchasing Healthy 100% Whey from Defendants.

165.    Defendants have benefited by the sale of the deceptively mislabeled product by collecting the price of the falsely labeled product, which consumers paid in reliance on the labeling and uniformly false and misleading advertising of Defendants.

166.    Defendants' retention of the payment made by Plaintiff and Class members would be unjust in that Defendants actively promoted Healthy 100% Whey by advertising the product on Hy-Vee's website, conducted in-store demonstrations and promotions, entered into sales and marketing agreements with NNW, and allowed NNW to post food recipes that used Healthy 100% Whey as an ingredient.

167.    Defendants' retaining the revenues from Plaintiff and Class members' purchase of Healthy 100% Whey, under these circumstances is unjust and inequitable because consumers were mislead to believe that they were receiving a product with vastly more protein and considerably less grams of sugar per serving than what they in fact received.

168.    Plaintiff and Class members were caused injury because they purchased a product they otherwise would not have purchased or paid a price premium due to the mislabeling and misrepresentations.

169.    Because Defendantsø retention of the non-gratuitous benefit conferred on it by Plaintiff and the Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

170.    Plaintiff, therefore, seeks an order requiring Defendants make restitution to Plaintiff and other members of the Class.

### FIFTH CAUSE OF ACTION
### Violation of Various State Consumer Protection Statutes

**Minnesota Consumer Fraud Act**
**Minn. Stat. § 325F.69, subd. 1; § 8.31, subd. 3a**
**Missouri Merchandising Practices Act**
**Mo. Rev. Stat. §§ 407.101 *et. seq.***
**Wisconsin Deceptive Trade Practices Act**
**Wis. Stat. 100.18 *et seq.***

171.    Plaintiff realleges and incorporates by reference the allegations set forth in paragraphs 1 through and including 170 above as if fully set forth herein.

172.    Plaintiff brings this Fifth Cause of Action individually and on behalf of the Class against Defendants.

173.    With the intent to induce consumers to purchase Healthy 100% Whey, Defendants made the aforementioned misrepresentations to the public.

174.    These representations were untrue and caused Plaintifføs and Class memberøs pecuniary loss at least in the amount of the purchase price of Healthy 100% Whey.

175.    Defendants, in connection with the sale of Healthy 100% Whey, deceptively advertised, marketed, labeled and sold Healthy 100% Whey to Plaintiff and Class members.

176.    As a direct result of Defendants' conduct, Plaintiff and Class members sustained damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court enter a judgment against Defendants NNW, LLC and Hy-Vee, Inc. in favor of Plaintiff, and grant the following relief:

A.    Determining that this action may be maintained as a Class action with respect to the Class indentified herein and certify it as such under Rules 23(b)(2) and 23(b)(3), or alternatively certify all issues and claims that are appropriately certified, and designate and appoint Plaintiff as Class Representative and her counsel as Class Counsel;

B.    Awarding Plaintiff and the Proposed Class members damages;

C.    Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposes Class members.

D.    Enjoining Defendants from selling the mislabeled Healthy 100% Whey product;

E.    Awarding attorneys' fees and costs as allowed by law;

F.    Awarding punitive damages as allowed by law; and

G.    Awarding Plaintiff and the Class members such other further and different relief as the nature of the case may require or as this Court may be determined to be just, equitable, and proper.

## JURY TRIAL DEMAND

Plaintiff, by counsel, respectfully requests a trial by jury on all her legal claims, as set forth herein.

DATED:  February 12, 2014          THE GUASTELLO LAW FIRM, LLC


By____*/s/ David J. Guastello*_____
David J. Guastello  MO #57924
4010 Washington, Suite 501
Kansas City, MO 64111
Telephone: (816) 753-7171
E-mail: david@guastellolaw.com

*Attorney for Plaintiff and the Proposed Class*